DEBRA W. YANG
United States Attorney
STEVEN D. CLYMER
Special Assistant United States Attorney
Chief, Criminal Division
CHRISTINE M. ADAMS (SBN 172876)
STEPHANIE YONEKURA McCAFFREY (SBN 187131)
Assistant United States Attorneys
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8692/1092
    Facsimile: (213) 894-6436
Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

APR 1 9 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

____ Priority
__✗_ Send
____ Clsd
____ Enter
__✗_ JS-5/JS-6
____ JS-2/JS-3

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 03-41-WJR |
| Plaintiff, | [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| KELLI DAVIS, | |
| Defendant. | |

ENTERED ON JCMS

APR 2 0 2004

The Court Finds As Follows:

On August 25, 2003, this Court held a hearing on defendant's
Motion and Supplemental Memorandum In Support of Motion for
Judgment of Acquittal or Alternatively for a New Trial.

Defendant appeared with her counsel of record, Mark Geragos.
Assistant United States Attorneys Lawrence Middleton and
Christine Adams appeared for the government.

The Court, after carefully considering the pleadings,
declarations and documents filed by the parties, as well as the
argument presented at the hearing, orally denied the motion at
the hearing.  This Order will supplement the Court's oral ruling



1  denying the motion.  In connection with this Order, the Court

2  makes the following Findings of Fact and Conclusions of Law.

3                          FINDINGS OF FACT

4  A.   There Was Sufficient Evidence to Sustain Defendant's

5       Conviction for Wire Fraud

6       1.   The Court finds that the evidence presented at trial

7  was sufficient to establish (1) that defendant acted with the

8  knowledge that wire transmissions would follow in the ordinary

9  course of business; and (2) that the wire transmissions could

10 reasonably be foreseen.  The indictment charged wire transfers of

11 funds from the lenders' banks to HUD's bank account at Mellon

12 Bank, in Pennsylvania.  These transfers occurred to effect

13 payment of the mortgage insurance premium in connection with each

14 loan.  (3/19/03 RT 182-83).  Such wire transfers were routine in

15 that HUD would not insure a loan unless the lender wire

16 transferred the mortgage insurance premium to HUD's Mellon Bank

17 account in Pennsylvania.  (3/19/03 RT 178, 182-83).  The parties

18 stipulated that the charged wire transfers occurred; thus, the

19 only issue was whether defendant had the requisite knowledge.

20 (3/27/03 RT 881 (Exh. 113 received in evidence)).

21      2.   The evidence at trial established the following facts,

22 which were sufficient to establish that defendant was aware of

23 the wire transmissions charged in the indictment or that the wire

24 transmissions were reasonably foreseeable:

25           a.   that defendant worked as a loan agent at Great

26 Western Bank as early as 1990 (3/19/03 RT 222; 3/25/03 RT 426),

27 and that defendant worked as a loan officer at RE Mortgage from

28 January 1995 through September 1999  (3/19/03 RT 223, 226-27;

                                2

1  4/1/03 RT 6);

2           b.   that defendant was knowledgeable about Federal

3  Housing Administration (FHA) loans as early as 1996 (when she

4  worked as a loan officer in Anaheim) (3/19/03 RT 223, 226-27,

5  232-33; 3/25/03 RT 427-28);

6           c.   that defendant handled at least eighty FHA-insured

7  loans during the 1995 through 1999 time frame (3/27/03 RT 838);

8           d.   that defendant had years of experience as a loan

9  officer in the real estate industry (4/1/03 RT 100);

10          e.   that defendant had worked for numerous companies

11 as a loan officer (4/1/03 RT 5-7, 125);

12          f.   that defendant did business with numerous large

13 lenders and had for many years (4/1/03 RT 34);

14          g.   that defendant funded thirty to forty, and

15 processed seventy to eighty, loans per month from 1997 through

16 1999 (4/1/03 RT 36);

17          h.   that defendant handled conventional loans and

18 loans insured by the FHA (4/1/03 RT 37,100-07); and

19          i.   that defendant spent most of her time outside the

20 office meeting with real estate agents, lenders and borrowers

21 (4/1/03 RT 43).

22 B.   The Interests of Justice Do Not Warrant Granting a New Trial

23      3.   The Court finds that the interests of justice do not

24 warrant granting defendant a new trial on any basis, including

25 the Court's decision at trial to admit (1) the Limited Denial of

26 Participation letters from the Department of Housing and Urban

27 Development (HUD); (2) testimony of FBI Special Agent Jeffrey

28 Fellman regarding loan transactions during the time period of the

3

1  fraud scheme; and (3) defendant's 1996 Internal Revenue Service

2  Form 1099.

3      4.   The interests of justice do not here require the

4  granting of a new trial.

5  C.  The Limited Denial of Participation Letters from HUD Were

6      Properly Admitted

7      5.   Government's Exhibit 109, a letter dated February 25,

8  2000, notified defendant of HUD's decision to preclude her from

9  participation in HUD's Single Family Insurance Programs within

10  the jurisdiction of HUD's Santa Ana Homeownership Center.  The

11  February 25, 2000 letter explained:

12          The cause of this LDP [Limited Denial of
            Participation] is that you, in your capacity
13          as a Loan Officer employed by R. E. Mortgage
            Group, Inc., participated in the submission
14          of FHA loan applications which included false
            documents and statements concerning the
15          borrower for the following properties:

16          FHA Case No.    Borrower    Property Address
            048-0531139     Dyer        6988-6988 ½ Fairfax
17                                       Dr., San Bernardino,
                                         CA 92404
18
            048-531122      Dyer        7020, 7022, 7024
19                                       Dwight Way, San
                                         Bernardino, CA 92404
20
                Specifically, you submitted loan
21          applications for both properties in which the
            same borrower certified each property to be
22          her primary residence.  The false documents
            were used to influence the insurance of these
23          loans by HUD.

24  The February 25, 2000 letter informed defendant that within

25  thirty days of receipt of the letter, she could make a written

26  request for a conference regarding the LDP or she could "contest

27  the LDP under the provisions of 24 CFR 24.713."

28      6.   Government's Exhibit 110, a letter dated May 1, 2000,

                                    4

1   referenced HUD's February 25, 2000 letter.  In the May 1, 2000

2   letter, HUD notified defendant that the limited denial of

3   participation would remain in effect for one year because

4   defendant "did not request a conference or contest the LDP under

5   the provisions of 24 CFR 24.713."

6        7.   Counts one and two of the indictment charged defendant

7   with wire fraud for the property transactions listed in the

8   February 25, 2000 letter - Fairfax Drive and Dwight Way.  In the

9   Execution of the Scheme to Defraud Section, the indictment

10  alleged defendant knowingly submitted false statements in the

11  loan files.  In addition to submitting false employment documents

12  and fraudulent down payments in the Fairfax Drive and Dwight Way

13  loan files, the indictment specifically charged defendant with

14  the following:

15              3.   On January 22, 1998, the loan funded
               for the purchase of the property located at
16             6988, 6988 ½ Fairfax Drive, San Bernardino,
               California.  On January 26, 1998, the loan
17             funded for the purchase of the property
               located at 7020, 7022, 7024 Dwight Way, San
18             Bernardino, California.  Defendant KELLI
               DAVIS submitted the loan applications for
19             both properties and certified that Cheryl
               Dyer, intended each property to be her
20             primary residence.

21  The indictment charged defendant with the exact activity at issue

22  in the LDP letters - defendant submitted two separate loan files

23  to HUD in the name of Cheryl Dyer and certified that Dyer

24  intended each property to be her primary residence.

25       8.   Defendant received the first letter informing her of

26  the LDP and giving her the right to contest the LDP or request a

27  conference.  Defendant did not contest the LDP or request a

28  conference.

9.    In an abundance of caution and at the defendant's request, the Court gave the jury the following limiting instruction to prevent any potential confusion:

> You have been presented with evidence that defendant may have received a letter from the United States Department of Housing and Urban Development stating its intent to suspend defendant from participation in HUD loan programs for submitting two loans at the same time, and that defendant failed to respond to that letter.  You may consider that testimony and evidence only to the extent that it tends to prove the existence of an element of a charged crime.  You may not find defendant guilty of the charged crime merely because of any administrative action that may or may not have been taken by HUD.

D.    Testimony Regarding the Scope of the Fraud Scheme Was Properly Admitted

10.   The indictment charged defendant with participating in a fraud scheme "[b]eginning on a date unknown but no later than September 1995, and continuing to a date unknown but at least until December 1999."

11.   On February 24, 2003, Judge Baird granted a motion to strike from the indictment language concerning the dollar amount of fraudulent loans submitted during the fraud scheme.  In making her ruling, Judge Baird asked if the government had provided the underlying discovery relating to the fraudulent loans.  At the time of the hearing, the government had not produced the underlying discovery.

12.   On March 3, 2003, the government produced the loss calculations, which identified 80 property transactions during the fraud scheme, to defendant.  (McCaffrey Dec., Exhs. A and B.) The March 3, 2003 discovery letter stated that the loss

1 | calculations and other items produced were "disclosed under the
2 | same terms and conditions set forth in the government's original
3 | discovery letter." Id. In the government's original discovery
4 | letter dated January 28, 2003, the government informed defendant
5 | that it "will make available for your inspection any item of
6 | evidence referred to in the enclosed reports/documents."
7 | (McCaffrey Dec., Exh. C.)  Therefore, as of March 3, 2003, the
8 | government not only identified the 80 property transactions at
9 | issue, but made the underlying property files available to the
10 | defense for review.

11 | 13.  At trial, Special Agent Jeffrey Fellman of the Federal
12 | Bureau of Investigation testified that he identified eighty loans
13 | in claims status in which defendant was the loan officer for the
14 | time period September 1995 through December 1999.  (3/27/03 RT
15 | 836-838).  He also testified that the loss suffered by HUD as a
16 | result of those eighty loans was $4.7 million.  Id.

17 | 14.  The defendant objected to the introduction of this
18 | testimony.  The Court heard arguments from both parties.  The
19 | Court found that the information was relevant and admissible.
20 | The Court's finding was not inconsistent with Judge Baird's prior
21 | ruling.  Moreover, the Court is not bound by the prior ruling and
22 | had the discretion to revisit this issue.  Luce v. U.S., 469 U.S.
23 | 38, 41-42 (1984) (finding "the district judge is free, in the
24 | exercise of sound judicial discretion, to alter a previous in
25 | limine ruling.")

26 | E.  Defendant's 1996 Form 1099 Was Properly Admitted
27 | 15.  Government's Exhibit 101 is a 1996 Form 1099 for
28 | defendant from her employer R.E. Mortgage Group, Inc.

1   Government's Exhibit 101 shows that defendant earned $526,541.94

2   in 1996 – during the relevant time period of the fraud scheme.

3        16.  At trial, defendant testified that the $526,541.94

4   represented commissions for the year.  She stated that she worked

5   twelve to fourteen hours on Monday through Friday and worked

6   sometimes on Saturday and Sunday.  She also testified that the

7   $526,541.94 did not reflect expenses associated with her job.

8   F.   The Government Did Not Commit Prosecutorial Misconduct in

9        Its Closing Argument

10       17.  The Court finds that the government did not commit

11  misconduct during its closing argument.  The government argued

12  that evidence of other wire transmissions that occurred in

13  connection with the same loan transactions charged in the

14  indictment could be used to determine whether defendant knew the

15  charged wire transmissions would follow in the ordinary course of

16  business or whether those wire transmissions were reasonably

17  foreseeable.  This argument was entirely appropriate.

18       18.  The Court finds that the government did not imply in

19  its closing argument, as defendant claims, that the wire transfer

20  fees reflected in the settlement statements (and identified as

21  government's exhibits 5 and 23 at trial) were the wire transfers

22  charged in the indictment.  Rather, the government argued that

23  evidence of the wire transfers reflected in exhibits 5, 11, and

24  23 could be considered in determining whether the wire transfers

25  charged in the indictment were reasonably foreseeable to

26  defendant.  (4/3/03 RT 83-94.)  Exhibits 5, 11, and 23 were

27  settlement statements in real estate transactions that were the

28  subjects of counts one, two, and three, respectively, in the

8

1  indictment.  It was reasonable for the jury to infer, and for the
2  government to argue, that evidence of other wire transfers in the
3  same transactions made it more likely that the charged wire
4  transfers were reasonably foreseeable to defendant.  It was also
5  reasonable for the jury to infer from this evidence that
6  defendant knew the charged wire transactions would occur in the
7  ordinary course of business.

8      19.  The government also argued that defendant's experience
9  as a loan officer in general, and with mortgage insurance
10 premiums in particular, made it more likely that the charged wire
11 transfers were reasonably foreseeable to her.  (4/3/03 RT 84-85).
12 This was also entirely appropriate.

13     20.  Contrary to defendant's claims, the government never
14 resorted to misconduct and never misrepresented the evidence.

15     21.  The government based its argument on the Court's
16 instructions to the jury and on testimony and exhibits that were
17 admitted in evidence at trial.  The government argued only the
18 evidence and reasonable inferences based on the evidence.  Thus,
19 there was nothing improper about the government's closing
20 argument.

21     22.  Any Conclusions of Law that also constitute Findings of
22 Fact are hereby incorporated into these Findings of Fact.

23                         CONCLUSIONS OF LAW

24 A.   There Was Sufficient Evidence to Sustain Defendant's
25      Conviction for Wire Fraud

26     1.   A judgment of acquittal is warranted pursuant to Rule
27 29 of the Federal Rules of Criminal Procedure if the evidence is
28 insufficient to sustain a conviction.  Fed. R. Crim. P. 29(a).

                                9

1  The Ninth Circuit has held that "[a] motion for judgment of

2  acquittal should be granted only if, viewing the evidence in the

3  light most favorable to the government, no rational trier of fact

4  could find beyond a reasonable doubt that the defendant is the

5  person who committed the charged crime." United States v.

6  Alexander, 48 F.3d 1477, 1490 (9th Cir. 1995) (affirming denial

7  of motion for judgment of acquittal because evidence was

8  sufficient to prove defendant robbed bank); see also United

9  States v. Tisor, 96 F.3d 370, 379 (9th Cir. 1996) (affirming

10  denial of motion for judgment of acquittal because evidence was

11  sufficient to prove defendant distributed methamphetamine and

12  conspired to do so). "The government is entitled to all

13  reasonable inferences that can be drawn from the evidence."

14  United States v. Lucas, 963 F.2d 243, 247 (9th Cir. 1992).

15      2.   The crime of wire fraud may be established (1) where

16  one acts with the knowledge that the wire transmissions will

17  follow in the ordinary course of business, or (2) where the wire

18  transmissions can reasonably be foreseen.   United States v.

19  Stapleton, 293 F.3d 1111, 116-17 (9th Cir. 2002)  (quoting United

20  States v. Lothian, 976 F.2d 1257, 1262-63 (9th Cir. 1992)).

21      3.   The evidence was sufficient for the jury to convict

22  defendant as charged in the indictment.   Accordingly, defendant's

23  motion for judgment of acquittal is denied.

24  B.   The Interests of Justice Do Not Warrant Granting Defendant a

25      New Trial

26      4.   Federal Rule of Criminal Procedure 33 provides: "On a

27  defendant's motion, the court may grant a new trial to that

28

10

1 defendant if the interests of justice so require."[1]  A motion for

2 a new trial "should be granted 'only in exceptional cases in

3 which the evidence preponderates heavily against the verdict.'"

4 U.S. v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981)(citation

5 omitted).

6     5.  The interests of justice do not here require the

7 granting of a new trial.

8 C.  The Limited Denial of Participation Letters from HUD Were

9     Properly Admitted

10     6.  Government's Exhibits 109 and 110, the LDP letters,

11 were properly admitted.  The LDP letters were relevant and

12 probative of a fact of consequence in the case as charged in the

13 indictment - the submission of two separate loan files in the

14 name of Cheryl Dyer and the fraudulent certification that Dyer

15 intended each property to be her primary residence.

16     7.  Given the effect a LDP would have on defendant's

17 business, her failure to respond to the letters was an arguably

18 adoptive admission that she had, in fact, knowingly submitted the

19 two loans with false information.  (3/26/03 RT, 725-727); United

20 States v. Schaff, 948 F.2d 501, 505 (9th Cir. 1991) (finding an

21 adoptive admission when "under the circumstances, an innocent

22 defendant normally would respond to the statement"); United

23 States v. McKinney, 707 F.2d 381 (9th Cir. 1983)(applying the

24 same test).

25     8.  The admission of the LDP documents did not confuse or

26

27     [1]  Because defendant has not moved for a new trial based on
newly discovered evidence, the following discussion focuses on
28 the "any other grounds" basis for a Rule 33 motion.

11

SCANNED

1   mislead the jury.

2   D.    Testimony Regarding the Scope of the Fraud Scheme Was

3         Properly Admitted

4         9.    The indictment charged defendant with six specific

5   counts of wire fraud and with participating in a fraud scheme

6   "[b]eginning on a date unknown but no later than September 1995,

7   and continuing to a date unknown but at least until December

8   1999."  Special Agent Felmann's testimony about the eighty

9   property transactions during the fraud scheme that went into

10  claims status was not evidence admitted pursuant to Federal Rule

11  of Evidence 404(b).  The testimony related to the scope of the

12  fraud scheme was "inextricably intertwined" with the crimes

13  charged.

14        10.   "Evidence should not be treated as `other crimes'

15  evidence when the evidence concerning the other act and evidence

16  concerning the crime charged are inextricably intertwined. . . .

17  The policies are simply inapplicable when some offenses committed

18  in a single criminal episode become `other acts' because the

19  defendant is indicted for less than all of his actions."  United

20  States v. Soliman, 813 F.2d 277, 278 (9th Cir. 1987) (internal

21  citations and punctuation omitted).

22        11.   "Inextricably intertwined" evidence is not limited to

23  situations in which it is used to "flesh out the circumstances

24  surrounding the crime [charged], thereby allowing the jury to

25  make sense of the testimony in its proper context."  United

26  States v. Ripinsky, 109 F.3d 1436, 1442 (9th Cir. 1997)

27  (overturned on other grounds) (internal citations omitted).

28  Rather, the evidence is inextricably intertwined with the

1 evidence of the crimes charged when such evidence is "direct

2 evidence of the ongoing conspiracy charged in the indictment."

3 Id.

4     12.  Evidence is inextricably intertwined with the charged

5 conduct when it establishes an "ongoing scheme to defraud."

6 United States v. Sayakhom, 186 F.3d 928, 938 (9th Cir. 1999).

7     13.  In this case, defendant was "indicted for less than all

8 of [her] actions."  Soliman, 813 F.2d at 278.  Though the

9 indictment alleged a fraud scheme from September 1995 through

10 December 1999 - over four years, defendant was specifically

11 charged only with six counts of wire fraud arising from six

12 specific loans between January 1998 and October 1998.  As Special

13 Agent Fellman's testimony established, the scheme actually

14 encompassed about eighty property transactions that took place

15 during the alleged time frame of the scheme.  Though wires

16 arising from those 80 loans were not specifically charged, the

17 loans themselves remained direct evidence of the underlying

18 scheme, the same scheme that underlay the six specific charges.

19     14.  Special Agent Felmann's testimony also gave context to

20 the government's investigation and prosecution of defendant.

21 Special Agent Felmann explained that the government investigated

22 defendant after being alerted to fraudulent activities at R.E.

23 Mortgage Group, Inc., defendant's employer during the relevant

24 time period.  In investigating R.E. Mortgage Group, Inc., the

25 government discovered that defendant had the largest number of

26 loans in default of all R.E. Mortgage employees.

27     15.  In addition, the scope of the fraud scheme is relevant

28 to defendant's silence when confronted with a limited denial of

13

SCANNED

1  participation from HUD programs.  Given the large number of FHA

2  loans defendant processed, the denial of participation would have

3  adversely affected her business.  Therefore, her non-response to

4  the LDP letters is viewed as an adoptive admission as discussed

5  above.

6      16.  The testimony regarding the scope of the fraud scheme

7  was relevant to the case, and not misleading or prejudicial.

8  Defendant's due process rights were not violated.

9  E.   Defendant's 1996 Form 1099 Was Properly Admitted

10     17.  Government's Exhibit 101 was relevant to show profits

11  of the scheme and defendant's intent to defraud.

12     18.  Defendant's objection to the admissibility of

13  Government's Exhibit 101 went to the weight of the evidence, not

14  its admissibility.  See United States v. Tank, 200 F.3d 627, 630-

15  31 (9th Cir. 2000)(flaws in the evidence go to the weight of the

16  evidence, not its admissibility).

17  F.   The Government Did Not Commit Prosecutorial Misconduct in

18       Its Closing Argument

19     19.  It is entirely appropriate for the government to base

20  its argument on the evidence and all reasonable inferences from

21  the evidence.  United States v. Henderson, 241 F.3d 638, 652 (9th

22  Cir. 2001) (citations omitted).

23     20.  When prosecutorial misconduct is alleged, "the issue is

24  whether, considered in the context of the entire trial, that

25  conduct appears likely to have affected the jury's discharge of

26  its duty to judge the evidence fairly."  Henderson, 241 F.3d at

27  652 (quoting United States v. Frederick, 78 F.3d 1370, 1379 (9th

28  Cir.  1996)).  The court should consider the government's entire

14

1  closing argument in context when analyzing a defendant's claim of

2  prosecutorial misconduct based on portions of the government's

3  closing argument.  See id.; United States v. Santiago, 46 F.3d

4  885, 892-93 (9th Cir.  1995) (finding that government's statement

5  in rebuttal portion of closing argument does not constitute

6  reversible error "when considered in context").  The government's

7  comments, considered in context, demonstrate at worst that the

8  language used was imprecise.  They are in no way sufficient to

9  establish prosecutorial misconduct.

10      21.  The government did not commit misconduct in its closing

11  argument.

12      Based on the foregoing, the defendant's Motion and

13  Supplemental Memorandum In Support of Motion for Judgment of

14  Acquittal or Alternatively for a New Trial is DENIED.

15

16

17  IT IS SO FOUND AND ORDERED.

18

19  DATED: 4-19-04

    HONORABLE WILLIAM J. REA
20                                 UNITED STATES DISTRICT JUDGE

21

22  Presented by:

23

24  _____

    Christine M. Adams
25  Assistant United States Attorney

26

27

28

                              15

## CERTIFICATE OF SERVICE

I, **Evelyn Masaitis,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

service was:

| | |
|---|---|
| [ ] **Placed in a closed envelope, for collection and interoffice delivery addressed as follows:** | [X] **Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:** |
| [ ] **By hand delivery addressed as follows:** | [X] **By facsimile addressed as follows:** |
| [ ] **By messenger addressed as follows:** | [ ] **by Federal Express addressed as follows:** |

**Mark M. Kassabian**
**Geragos & Geragos**
**350 S. Grand Avenue**
**39th Floor**
**Los Angeles, CA 90071-3480**
**Facsimile: (213) 625-1600**

This Certificate is executed on **March 16, 2004** at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

_Evelyn Masaitis_
Evelyn Masaitis